UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL HOPKINS,<br><br>                Plaintiff,<br><br>     v.<br><br>INTEGON GENERAL INSURANCE CO.,<br><br>                Defendant. | CASE NO. C18-1723<br><br>ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant Integon General Insurance Corporation's ("Integon's") Motion for Partial Summary Judgment. (Dkt. No. 15.) Having reviewed the Motion, the Response (Dkt. No. 21), the Reply (Dkt. No. 23), and all related papers, the Court DENIES the Motion.

**Background**

Plaintiff, Daniel Hopkins, is a 70 year-old retiree who lives on a boat in Seattle with his wife. (Dkt. No. 16, Declaration of Eliot M. Harris ("Harris Decl."), Ex. A at 5:21-23; 6:5-8; 9:22-25.) In 2011, before the accident that is at issue in this case, Plaintiff was involved in a car

accident that caused a traumatic brain injury and several associated symptoms, including vertigo. (Id., Ex. I at 144.) The vertigo "was extreme" but was corrected with treatment. (Id., Ex. A at 36:14-16, 37:11-13.)

On April 23, 2016, Plaintiff was stopped behind a pedestrian crosswalk in his car, with his wife in the passenger seat, when he was rear-ended by a distracted driver. (Dkt. No. 22, Declaration of Ann H. Rosato ("Rosato Decl."), Ex. 1 at 2-3.) The driver of the other car, Pavielle Montes, spoke with Plaintiff and his wife immediately after the accident and found that they "appeared fine, and neither claimed or demonstrated any injuries at the time." (Dkt. No. 17, Declaration of Pavielle Montes ("Montes Decl."), ¶ 8.) But Plaintiff "remember[s his] head ringing" and feeling "really concerned" about his wife's injury. (Rosato Decl., Ex. 2 at 49:16-17.) When Plaintiff woke up the next morning he experienced "big-time vertigo" that reminded him of the vertigo that he experienced after the previous accident in 2011. (Id. at 55:4-7.) After he got out of bed, he realized he also had "another type of dizziness, which . . . [was] a swaying or rocking [] [j]ust totally different than . . . [the] initial bout of vertigo." (Id. at 55:20-22.) Plaintiff had never experienced this type of vertigo before. (Id. at 56:15-20.) Two days after the accident, Plaintiff was diagnosed with a concussion. (Harris Decl., Ex. C at 30.)

On June 15, 2016, Plaintiff was seen by Dr. Carolyn L. Taylor for a neurological evaluation. (Rosato Decl., Ex. 3 at 12.) Dr. Taylor concluded that "[t]he impact did cause an inner ear disturbance resulting in new gravitational vertigo due to damage to the inner ear utricle." (Id. at 14.) Dr. Taylor described Plaintiff's vertigo as "clearly new right after the whiplash injury, the day after" and concluded that he would have "that residual vertigo long-term" and it was unlikely to improve with additional treatment. (Id., Ex. 4 at 32:17-21,

33:11-12, 33:4-5.) Several months later, on September 22, 2017, Plaintiff's physical therapist wrote that Plaintiff's headaches had "resolved," but he continued to experience "chronic disequilibrium," described as "a constant rocking sensation" that "is not unusual for him as it has happened in the past before the concussion." (Dkt. No. 16, Ex. E at 99-101.)

In September 2017, Plaintiff requested payment of the policy limit from Progressive Insurance, Ms. Montes' liability insurance carrier. (Dkt. No. 21 at 3.) Plaintiff accepted the $25,000 policy limit after obtaining approval from Defendant, his insurance carrier. (Id. Ex. 5 at 23.) Plaintiff also carried underinsured motorist (UIM) insurance with Defendant with a policy limit of $250,000. (Id. Ex. 6 at 25.) After an initial evaluation of Plaintiff's claim, Defendant's claims adjustor requested a case reserve of $100,000 noting that Plaintiff was claiming "constant vertigo and balance issues" and concluding, "it is very possible this case could potentially be worth the policy limits depending on the severity of the balance and vertigo issues." (Id., Ex. 7 at 30.) On March 2, 2018, another claims adjustor, Mary Gordon, recommended a case reserve of $84,000, which took into account the $25,000 Ms. Montes' insurer had already paid and another $6,000 Plaintiff received in Personal Injury Protection ("PIP") payments. (Id., Ex. 9 at 35.)

On March 26, 2018, Plaintiff submitted a request to Defendant for payment of his UIM policy limit of $250,000. (Id., Ex. 10.) On April 24, 2018, Ms. Gordon offered $17,340 based on the note from Plaintiff's physical therapist at Cascade Dizziness and Balance and explained that Defendant was "not considering any permanency" in making its offer. (Id., Ex. 11 at 43.) Ms. Gordon later explained that if she had determined that Plaintiff's gravitational vertigo and balance issues were permanent conditions, she would have evaluated his claim based on factors such as "his lifestyle," "the effect on him and, you know, how he feels about that, how's he able

to cope." (Id. Ex. 16 at 69:22-25.) Ms. Gordon had not conducted that analysis when she extended the $17,340 offer to Plaintiff. (Id. at 70:4-11.) Plaintiff explained that the Cascade note was made in error and renewed his request for Defendant to tender the $250,000 policy limit. (Id., Ex. 12.)

In May 2018 Defendant began a records review, hiring neurologist Dr. Roman Kutsy to review Plaintiff's medical records. (Id. Ex. 14; Harris Decl., Ex. C at 64-72.) Ms. Gordon had not had an independent doctor look at Plaintiff's claim before extending the $17,340 offer. (Id., Ex. K at 51:24-52:3.) Dr. Kutsy concluded that Plaintiff's symptoms could have been treated with "[t]hree months of physical therapy and three months of vestibular therapy." (Id.) Based on Dr. Kutsy's finding, Defendant increased its offer to $40,000. (Id., Ex. D at 81.)

On October 16, 2018, Plaintiff filed this lawsuit in King County Superior Court, alleging a claim for benefits under the UIM Policy, the extra-contractual claims of failure to act in good faith, negligence, violation of the Insurance Fair Conduct Act ("IFCA"), and violation of the Consumer Protection Act ("CPA"). (Dkt. No. 1, Ex. 1 ("Compl.").) Defendant removed the matter to this Court on November 30, 2018. (Dkt. No. 1.) Defendant now moves to dismiss Plaintiff's IFCA, bad faith, and CPA claims.[1]

**Discussion**

**I.      Legal Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears

---

[1] While Defendant announces that it seeks to dismiss Plaintiff's negligence claim, Defendant makes no arguments to that effect in the body of its Motion. Defendant has therefore failed to carry its burden of establishing an absence of a genuine dispute over a material fact regarding Plaintiff's negligence claim. Celotex, 477 U.S. at 323.

the initial burden to demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine dispute over a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

**A. IFCA**

Defendant contends that Plaintiff cannot establish that: (1) Defendant denied or unreasonably refused to pay Plaintiff's UIM claim or (2) any "actual damages" were proximately caused by any alleged violation. (Dkt. No. 15 at 15-17.)

1. Denied or Unreasonably Refused to Pay

IFCA provides a cause of action when an insurance policy claimant is "unreasonably denied a claim for coverage or payment of benefits by an insurer." RCW 48.30.015(1). "Where the insurer pays or offers to pay a paltry amount that is not in line with the losses claimed, is not based on a reasoned evaluation of the facts (as known or, in some cases, as would have been known had the insurer adequately investigated the claim), and would not compensate the insured for the loss at issue, the benefits promised in the policy are effectively denied." Morella v. Safeco Ins. Co. of Illinois, No. C12-0672RSL, 2013 WL 1562032, at *3 (W.D. Wash. Apr. 12, 2013); Heide v. State Farm Mut. Auto. Ins. Co., 261 F. Supp. 3d 1104, 1107 (W.D. Wash. 2017). "A determination of whether an offer effectively denies an insured the benefits of the insurance policy should focus 'primarily on what [the insurer] knew or should have known at the time the offer was made.'" Heide, 261 F. Supp. 3d at 1107-08 (quoting Morella, 2013 WL 1562032, at *4).

1        Defendant argues that based on what it knew at the time, its $17,340 offer to Plaintiff was

2 reasonable and therefore Plaintiff cannot establish an IFCA claim. (Dkt. No. 15 at 15-17.) In

3 support of its argument, Defendant includes a list of what it "'knew or should have known at the

4 time the offer was made.'" (Id. at 15 (quoting Heide, 261 F.Supp.3d at 1107-08).) This includes

5 an accounting of the $32,085.75 Plaintiff had already received from Ms. Montes' insurer and his

6 own PIP benefits. (Id. at 15.) It also includes Defendant's contention that all of Plaintiff's

7 symptoms from the 2016 collision had resolved except "some vertigo." (Id.)

8        However, at the time of its offer, Defendant also had Dr. Taylor's conclusion that

9 Plaintiff had a new type of vertigo caused by the 2016 collision that was unlikely to resolve.

10 (Rosato Decl., Ex. 4 at 33:11-12, 33:4-5, 32:17-21.) The vertigo and balance issues that

11 Defendant minimizes in its briefing were significant enough for its claims adjustor to conclude:

12 "it is very possible this case could potentially be worth the policy limits depending on the

13 severity of the balance and vertigo issues." (Id. at 30.) And the claims adjustor who extended

14 the offer admits she did so without evaluating Plaintiff's claim based on factors such as "his

15 lifestyle," "the effect on him and, you know, how he feels about that, how's he able to cope."

16 (Id. Ex. 16 at 69:22-25; 70:4-11.) A reasonable fact-finder could therefore conclude that

17 Defendant did not conduct a "reasoned evaluation of the facts (as known or, in some cases, as

18 would have been known had the insurer adequately investigated the claim)" and that a $17,340

19 offer is not reasonable compensation for permanent vertigo that Defendant's own claims adjustor

20 thought could be worth the policy limit of $250,000. Morella, 2013 WL 1562032, at *3.

21   2. Damages

22        Plaintiff contends that because Defendant unreasonably refused to pay Plaintiff's claim,

23 he was forced to retain an insurance expert to determine whether Defendant's refusal to pay

24

benefits for his gravitational vertigo was in line with industry standards. (Dkt. No. 21 at 13.) Defendant argues that the cost of an insurance expert does not constitute "actual damages" under IFCA, where a prevailing party is entitled to "actual damages sustained, together with the costs of the action." RCW 48.30.015(1); (Dkt. No. 15 at 17-18.) Defendant urges the Court to follow Schreib v. Am. Family Mut. Ins. Co., 129 F. Supp. 3d 1129, 1141 (W.D. Wash. 2015), which concluded that the statutory language "costs of the action," which is separated from "actual damages" implies "that actual damages are separate and distinct, which precludes attorneys' fees and other litigation costs from factoring into the maximum enhanced damages made available to plaintiffs."

However, this Court previously concluded that an expert witness fee constitutes "actual damages" under IFCA. Wall v. Country Mut. Ins. Co., 319 F. Supp. 3d 1227, 1235 (W.D. Wash. 2018). In Wall, the Court applied the reasoning of Coventry v. American States Ins. Co., 136 Wash.2d 269, 281-83 (1998), which held that expert witness fees constitute "harm" in bad faith actions. Finding it is not possible to have an "unreasonable denial" by an insurer that does not amount to bad faith conduct, this Court held that if Plaintiffs were to succeed in establishing an unreasonable denial on the part of the Defendant, their expert witness fees would constitute "harm."

Defendant argues this reasoning is refuted by additional statutory language, which states:

> [T]he superior court shall, *after* a finding of unreasonable denial of a claim for coverage or payment of benefits . . . award reasonable attorneys' fees and actual and statutory litigations costs, including expert witness fees . . .

(Dkt. No. 23 at 5 (emphasis Defendant's).) Defendant contends that this "statutory language shows that an award of attorney's fees and costs, including expert witness fees are allowed only *after* Plaintiff can establish all of the essential elements of the claim, including a showing of

actual damages." (Id.) But Defendant's argument reads additional language into the statute, which does not require "a finding of unreasonable denial of a claim for coverage" and "actual damages" before the Court can award reasonable attorneys' fees and statutory litigation costs." The Court therefore finds that Plaintiff has established a genuine issue of material fact as to each element of his IFCA claim.

**B. CPA**

The CPA allows a plaintiff to recover when he can establish the following elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to the plaintiff in his or her business or property; (5) causation. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 784-85 (1986). Where a violation of chapter 284-30-330 of the Washington Administrative Code ("WAC") is shown, the first two elements of a CPA claim are proved. St. Paul Fire & Marine Ins. Co. v. Onvia, Inc., 165 Wash. 2d 122, 133-34 (2008). Plaintiff alleges that Defendant violated subsection four, six, and seven of WAC 284-30-330. (Dkt. No. 21 at 11-12, 14-15.) As discussed above, the Court finds that a reasonable fact-finder could determine Defendant violated WAC 284-30-330(7) by compelling Plaintiff to initiate or submit to litigation to recover amounts due under an insurance policy by offering substantially less than what he will ultimately recover on his claim. And because "CPA claims alleging unfair insurance claims practices always meet the public interest element," Aecon Bldgs., Inc. v. Zurich N. Am., 572 F. Supp. 2d 1227, 1238 (W.D. Wash. 2008), Plaintiff has established the first three elements.

However, Defendant argues that Plaintiff has not shown that an unfair or deceptive act or practice caused damage to his business or property. (Dkt. No. 15 at 18-20.) But the Washington Supreme Court has held that "to the extent [an insured] can establish it incurred expenses as a

direct result of [the defendant's] breach of contract and bad faith actions, it was harmed." Coventry, 136 Wash. 2d at 283. This includes Plaintiff's expenses of hiring an insurance expert to determine if coverage was denied in bad faith. Id.

**C. Bad Faith**

The tort of insurer bad faith follows standard tort principles—it requires proving duty, breach, and damages proximately caused by the breach. Mut. of Enumclaw Ins. Co. v. Dan Paulson Const., Inc., 161 Wash. 2d 903, 915 (2007); Smith v. Safeco Ins. Co., 150 Wash.2d 478 (2003). Additionally, to demonstrate bad faith, an insured must show the denial of benefits was "unreasonable, frivolous, or unfounded," as opposed to simply incorrect. Dan Paulson Const., Inc., 161 Wash. 2d at 915; Kirk v. Mt. Airy Ins. Co., 134 Wash.2d 558 (1998) (en banc). Defendant argues that Plaintiff's allegations that Defendant's offer was too low do not establish a CPA claim; Plaintiff must demonstrate "something more." (Dkt. No. 15 at 21.) The Court finds that Plaintiff has done so.

At the time Defendant made its $17,340 offer, two of Defendant's claims adjustors had set case reserves of $100,000 and $84,000. (Rosato Decl., Ex. 7.) In setting a $100,000 case reserve, Defendant's first claims adjustor noted it was unclear if Plaintiff's "constant vertigo and balance issues" would resolve, and therefore, "it is very possible this case could potentially be worth the policy limits depending on the severity of the balance and vertigo issues." (Id. at 30.) Yet Defendant made an offer that was significantly lower than the case reserves set by either adjustor, making an offer that did "not consider[] any permanency." (Id., Ex. 11 at 43)

When Defendant's claims adjustor made the offer she had not conducted a records review or spoken with an expert about Plaintiff's injury (Id. Ex. 14; Harris Decl., Ex. C at 64-72, Ex. K at 51:24-52:3), had not considered any of the ways in which the vertigo would impact Plaintiff's

life, (Id. Ex. 16 at 69:22-25), and apparently ignored Dr. Taylor's conclusion that Plaintiff's vertigo was unlikely to resolve with further treatment (Id. Ex. 11 at 30). Instead, Defendant's offer was based on a single note in Plaintiff's file from his physical therapist, who wrote that the "constant rocking sensation" Plaintiff was experiencing "happened in the past before the concussion." (Rosato Decl., Ex. E at 99-101.) When Plaintiff explained that this note was inaccurate, that his vertigo was new to the 2016 accident, Defendant did not increase its offer. (Id., Ex. 12.) Given these facts, a reasonable jury could determine that Defendant's claim handling was "unreasonable, frivolous, or unfounded," as opposed to simply incorrect. Dan Paulson Const., Inc., 161 Wash. 2d at 915.

**Conclusion**

Because Defendant has not met its burden of demonstrating that there are no genuine issues of material fact as to each of Plaintiff's extracontractual claims, the Court DENIES Defendant's Motion.

The clerk is ordered to provide copies of this order to all counsel.

Dated March 26, 2020.

Marsha J. Pechman
United States District Judge