UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL HOPKINS,<br><br>                Plaintiff,<br><br>    v.<br><br>INTEGON GENERAL INSURANCE CORPORATION,<br><br>                Defendant. | CASE NO. C18-1723 MJP<br><br>ORDER DENYING IN PART GRANTING IN PART DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND LIMITATION OF UIM VERDICT;<br><br>DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT |

This matter comes before the Court upon Defendant's Motion for Judgment as a Matter of Law and Limitation of Verdict on Plaintiff's UIM claim (Dkt. No. 95) and upon Plaintiff's Motion for Attorneys' Fees and Motion for Judgment Notwithstanding the Verdict (Dkt. No. 96). Having read the Motions, the Responses (Dkt. Nos. 98, 100), the Replies (Dkt. Nos. 102, 104), the supplemental briefing (Dkt. Nos. 115, 116, 118), and the related record, the Court DENIES

1  in part GRANTS in part Defendant's Motion and DENIES in part, GRANTS in part Plaintiff's
2  Motion.

### Background

Plaintiff, Daniel Hopkins, brought this case against his insurer, Defendant Integon General Insurance Corporation, after he was rear-ended by another driver in 2016. The other driver's policy with Progressive Insurance Company was limited to $25,000, which Progressive paid to Plaintiff for his injuries. (Dkt. No. 78 at 3.) But when Plaintiff began experiencing severe vertigo shortly after the accident, exacerbated by a traumatic brain injury he sustained from a previous car accident, he understood that he would require additional coverage from Integon, who insured Plaintiff under an underinsured motorist ("UIM") policy.

The severity of Plaintiff's injury was contemplated by his neurologist, Dr. Carolyn Taylor, who evaluated Plaintiff after the accident. Dr. Taylor noted "[t]he impact [of the collision] did cause an inner ear disturbance resulting in new gravitational vertigo due to damage to the inner ear utricle." (Trial Ex. 6 at 2.) She concluded that Plaintiff suffered from "[r]ecurrent post-concussive symptoms likely as a result of his brain's inability to compensate as well because of his fatigue from the vertigo, or he may actually have sustained another mild concussion." (Id.)

On March 26, 2018, Plaintiff submitted a request to Defendant for payment of his UIM policy limit of $250,000. Integon's claims' adjustor, Mary Gordon, summarized her first conversation with Plaintiff's attorney in a note in Plaintiff's claim file: "Main injury is vertigo, which his attorney relates will not improve, according to his neurologist." (Trial Ex. 1 at 28.) Ms. Gordon understood that because of Plaintiff's prior brain injury "he was a potential eggshell," or someone who is more susceptible to injury. (Dkt. No. 109 at 79:1-2.) In an email

to her supervisor on April 17th, 2018, Ms. Gordon wrote: "His attorney claims that he'll never return to his pre-collision status, and his neurologist said it may never resolve but hopes it will continue to improve." The following week, Ms. Gordon offered $17,340, telling Plaintiff's lawyer that Integon "was not considering any permanency." (Dkt. No. 109 at 35:3-6; Trial Ex. 1 at 23.) Plaintiff rejected Integon's offer and once again demanded the policy limits.

Integon then searched for a doctor who would conduct an independent review of Plaintiff's medical situation, asking for a recommendation from one of Integon's defense attorneys. (Dkt. No. 109 at 40:5-13.) According to the claims file, the defense attorney told Ms. Gordon that in his experience doctors will not agree to review the records in a traumatic brain injury case without meeting with the patient because "[r]ecords won't show them what they need in order to provide an opinion." (Dkt. No. 109 at 57:10-58:1; 60:7-8.) When Ms. Gordon asked the defense attorney "if there's any downside to having an [in person medical exam], if that's the route we choose to go," his response was "not really, other than if you do an [in person medical exam], you'll have to share it with [Plaintiff]." (Id. at 62:21-25.) On the other hand, Ms. Gordon noted that if Integon only did a records review, "we don't have to give it to [Plaintiff] or tell [him] who we consulted with." (Id. at 63:3-4.) Integon hired neurologist Dr. Roman Kutsy who agreed to provide an opinion without evaluating Plaintiff in person. Dr. Kutsy concluded that with physical therapy Plaintiff could recover from his injuries within three months. (Dkt. No. 109 at 74:15-19; Trial Ex. 1 at 13.) After receiving Dr. Kutsy's report, Integon extended a second offer to Plaintiff, this time for $40,000. (Dkt. No. 109 at 75:4-8.)

On October 16, 2018, Plaintiff filed suit in King County Superior Court. Defendant removed the matter to this Court on November 30, 2018. Following a seven day jury trial beginning on October 5, 2020, the jury returned a verdict in favor of Plaintiff on his claim for

benefits under his UIM policy in the amount of $751,491; his Consumer Protection Act ("CPA") claim in the amount of $16,931; and his claim that Defendant acted in bad faith in the amount of $180,231. (See Dkt. Nos. 92-94.) The jury also found that Defendant did not violate the Insurance Fair Conduct Act ("IFCA") or act with negligence. (Id.)

**Discussion**

**I.     Defendant's Motion for Judgment as a Matter of Law and Limitation of UIM Verdict**

**A.  Judgment as a Matter of Law**

Defendant moves for judgment as a matter of law on Plaintiff's CPA Claim, arguing that the jury's award of unpaid medical bills and expert witness fees was improper as neither category is compensable under the CPA. (Dkt. No. 95.)

1. Medical Expenses

To begin, Plaintiff's unpaid medical bills are compensable under the CPA, as the Washington Supreme Court has held that "the deprivation of contracted-for insurance benefits is an injury to 'business or property' regardless of the type of benefits secured by the policy." Peoples v. United Servs. Auto. Ass'n, 194 Wash. 2d 771, 779 (2019). While Integon argues that the Peoples holding applies only to the PIP claims at issue in that case, the Court's analysis rooted the plaintiffs' injuries in the insurer's violation of their rights under the insurance contract:

> An insured, therefore, has a legally protected property interest in benefits due under the contract and a related right to insurance dealings free from bad faith. Claims mishandling and wrongful denial of benefits invade this property interest, regardless of the type of event that triggers coverage.

Id. at 780. Defendant has failed to explain why Plaintiff's UIM policy does not afford him the same property interest in benefits due.

1     Integon also argues that Plaintiff cannot demonstrate that its denial of benefits is the "but
2  for" cause of Plaintiff's medical expenses because these expenses were covered by the $25,000
3  from Progressive and $10,000 in PIP coverage from Integon. (Dkt. No. 116 at 5.) But Plaintiff
4  incurred the $931 in unreimbursed medical expenses after these payments were made. (See Dkt.
5  No. 118 at 5 (citing Dkt. No. 55, Ex. 1).) As determined by the jury, Integon's offers in
6  combination with the Progressive payment and the PIP coverage were insufficient to compensate
7  Plaintiff for his injuries and medical expenses. There is nothing to indicate, therefore, that these
8  payments covered all future medical expenses. Plaintiff has established that Integon's failure to
9  pay the UIM benefits caused his out-of-pocket medical expenses, which are compensable under
10 the CPA. See Peoples, 194 Wash. 2d at 781 ("[T]o the extent proved, the plaintiffs may recover
11 actual damages, including out-of-pocket medical expenses that should have been covered[.]")

12    Finally, Integon argues that Plaintiff waived his right to recover unreimbursed medical
13 expenses by conceding in response to Integon's present motion, "that medical expenses are not
14 recoverable under the CPA." (Dkt. No. 98 at 3 n. 2.) Because the Washington Supreme Court
15 has held otherwise, see Peoples, supra, Plaintiff quickly corrected the mistaken concession in the
16 hearing on the motion (Dkt. No. 113), and Defendant had an additional opportunity to brief
17 Plaintiff's argument after the retracted concession (Dkt. No. 116), the Court declines to hold
18 Plaintiff to a concession that was contrary to the law, especially where Integon has not
19 demonstrated any prejudice.

20    2.  Expert Witness Fees

21    Integon argues that the fees for Plaintiff's expert, Steven Strzelec, are not compensable
22 under the CPA because Plaintiff did not hire Mr. Strzelec until after filing this lawsuit. Integon
23 relies on Lock v. Am. Family Ins. Co., 12 Wash. App. 2d 905, 928 (2020), where the court held
24

1  that "[i]nvolvement in prosecuting a CPA claim is insufficient to show injury to business or

2  property." Plaintiff argues that Integon relies on a false dichotomy between investigation and

3  litigation, especially where Mr. Strzelec was only able to fully investigate Plaintiff's claim once

4  Integon produced materials through discovery and it was only this investigation "that confirmed

5  Mr. Hopkin[s'] belief that Integon had violated the CPA." (Dkt. No. 118 at 9.)

6       This Court has held that expert witness fees constitute "harm" under the CPA where the

7  insured demonstrates the fees are the result of the insurer's "unfair or deceptive practices." Wall

8  v. Country Mut. Ins. Co., 319 F. Supp. 3d 1227, 1235 (W.D. Wash. 2018) (citing Coventry v.

9  American States Ins. Co., 136 Wash.2d 269, 281-83 (1998)). In this case, there was evidence

10 that Integon was not fully transparent with Plaintiff (see Dkt. No. 109 at 62:21-25 (Integon's

11 claims' adjustor discussing the benefits of hiring a doctor who would conduct a records-only

12 review: "we don't have to give [the results] to [Plaintiff] or tell [him] who we consulted with"),

13 the Court therefore finds persuasive Plaintiff's argument that Mr. Strzelec was only able to fully

14 evaluate Plaintiff's claim after the discovery process.

15      The remainder of Integon's argument—that expert fees are not compensable at all under

16 the CPA—has been addressed by this Court on three previous occasions and is contrary to

17 Washington law. (See Dkt. Nos. 37, 67, 88.) The Court will not address this argument again

18 here.

19 **B. Limitation of UIM Verdict**

20      Integon also moves to decrease the jury's verdict on the UIM benefits claim to the

21 contractual limits of $250,000. (Dkt. No. 95 at 7.) Plaintiff concedes that in the first party UIM

22 context, an award for benefits cannot exceed the UIM policy limits. (Dkt. No. 98 at 7.) The

Court therefore reduces the judgment to the policy limit of $250,000 on Plaintiff's UIM benefits claim.

**II.     Plaintiff's Motion for Judgment Notwithstanding the Verdict**

Plaintiff asks the Court to (1) amend the judgment to find Defendant violated IFCA, (2) treble the IFCA damages, (3) treble the damages under the CPA up to the $25,000 limit, (4) award reasonable attorneys' fees and expenses pursuant to Olympic Steamship or the CPA, (5) apply a lodestar multiplier between 1.5 and 2.0 to Plaintiff's attorneys' fees, and (6) award prejudgment interest and costs.  Defendant objects to each request.

**A.  IFCA Violation**

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff moves to alter the jury's judgment that Defendant did not violate IFCA. "'Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion.'"  Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting McDowell v. Calderon, 197 F.3d 1253, 1255 n.1 (9th Cir.1999) (en banc) (per curiam)).  "But amending a judgment after its entry remains 'an extraordinary remedy which should be used sparingly.'"  Allstate, 634 F.3d at 1111 (quoting McDowell, 197 F.3d at 1255 n.1).

The jury valued Plaintiff's UIM benefits claim at $750,000, more than 18 times Defendant's highest offer to Plaintiff.  (Dkt. Nos. 92-94.)  Plaintiff argues that Defendant's offer was therefore "unreasonably low" as a matter of law, which constitutes an IFCA violation. While courts in this district "have concluded that the 'payment of benefits' prong of IFCA covers scenarios where an insurer makes an unreasonably low offer" Heide v. State Farm Mut. Auto. Ins. Co., 261 F. Supp. 3d 1104, 1107 (W.D. Wash. 2017); see also Kovarik v. State Farm Mut. Auto. Ins. Co., No. C15-1058-TSZ, 2016 WL 4555465, at *2 (W.D. Wash. Aug. 31, 2016), the

1  Court finds that the difference between Integon's offer and the jury's valuation is insufficient
2  evidence that the jury erred, and does not justify the "extraordinary remedy" of reversing the
3  jury's judgment.
4      While Plaintiff asks the Court to find damages caused by the IFCA violation in the same
5  amount as the jury's award for Integon's violation of good faith, "[c]laims under IFCA are
6  similar to, but not identical with, related bad faith or Consumer Protection Act (CPA) claims."
7  Cmt., Insurance Fair Conduct Act, 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI
8  320.06.01 (7th ed.). This is apparent when evaluating the elements of an IFCA violation, which
9  requires Plaintiff to prove the insurer "<u>unreasonably</u> denied payment of benefits" (Jury
10 Instruction No. 22 (emphasis added)), whereas the claim for failure to act in good faith requires
11 Plaintiff to prove that Integon's "conduct was unreasonable, frivolous, <u>or</u> <u>unfounded</u>" (Jury
12 Instruction No. 23 (emphasis added)). The jury could therefore have determined that Integon's
13 offer was unfounded without determining that its conduct was unreasonable. The jury's finding
14 that Integon was not negligent is additional evidence that the jury determined Integon's conduct
15 was something less than unreasonable. The Court therefore DENIES Plaintiff's motion to amend
16 or alter the judgment.

### III.  Treble CPA Damages

18  Plaintiff asks the Court to treble the Jury's award of $16,931 to the statutory maximum of
19 $25,000. Such an award is within the Court's discretion and "may not exceed twenty-five
20 thousand dollars [$25,000.00]." <u>N. Seattle Health Ctr. Corp. v. Allstate Fire & Cas. Ins. Co.</u>, No.
21 C14-1680JLR, 2016 WL 1643979, at *5 (W.D. Wash. Apr. 26, 2016) (citing <u>Edmonds v. John L.</u>
22 <u>Scott Real Estate, Inc.</u>, 942 P.2d 1071, 1081 (Wash. Ct. App. 1997); RCW 19.86.090). While
23 Integon's claims' adjustor concluded "[if Plaintiff's] injury complaints are substantiated, it's
24

very possible this case could potentially be worth the policy limits," Integon inexplicably "did not consider permanency" in making an initial offer to Plaintiff, disregarding the opinions of Plaintiff's treating physicians. (Trial Ex. 1 at 23; Dkt. No. 109 at 79:1-2.) When Integon's first offer was challenged, Integon sought out a doctor who would offer an opinion on Plaintiff's condition without evaluating him in person, even after being warned by Integon's own defense attorney that most doctors will not offer an opinion without meeting with the patient because "[r]ecords won't show them what they need in order to provide an opinion." (Dkt. No. 109 at 57:10-12; 60:7-8.) Nevertheless, Integon found such a doctor, noting that in case Integon did not approve of the doctor's opinion, "we don't have to give it to [Plaintiff] or tell [him] who we consulted with." (Id. at 63:3-4.) In light of this conduct, and Plaintiff's role in uncovering it, the Court finds Plaintiff is entitled to treble damages of $25,000, the maximum allowable amount under the CPA.

**IV.   Attorneys' Fees**

    1.   Olympic Steamship Fees

Plaintiff contends he is entitled to attorneys' fees as the prevailing party on his breach of contract claim, pursuant to Olympic Steamship Co. v. Centennial Ins. Co., 117 Wn.2d 37, 52-54 (1991), where the Washington Supreme Court held that an insured should be awarded attorneys' fees "in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." Id. at 54. Where the insurer does not deny coverage, but disputes the proper value of the claim, however, attorneys' fees are not warranted under Olympic Steamship. Pinney v. Am. Family Mut. Ins. Co., No. C11-175 MJP, 2012 WL 584961, at *5 (W.D. Wash. Feb. 22, 2012)).

1    In this case, Plaintiff has conceded that Integon accepted coverage immediately, and "[i]n
2    response to Plaintiff's demand for the policy limits of $250,000, Defendant offered $17,340.00
3    on April 24, 2018." (Dkt. No. 78, Pretrial Order, Admitted Facts, ¶ 17.) It is therefore clear that
4    this litigation concerns a dispute over the value of Plaintiff's claim and <u>Olympic Steamship</u> fees
5    do not apply.

6        2.    <u>Pursuant to the CPA</u>

7    Plaintiff seeks to recover all attorneys' fees and expenses pursuant to the CPA, while
8    Integon argues he can only recover those fees directly related to his CPA claim. While Integon
9    cites cases involving a CPA claim and a variety of other claims (<u>see</u> Dkt. No. 100 at 9 (citing
10   <u>Sing v. John L. Scott, Inc.</u>, 83 Wash. App. 55, 72 (1996), <u>rev'd on other grounds</u>, 134 Wash. 2d
11   24 (1997))), in cases involving the claims at issue here—breach of the insurance contract, bad
12   faith, negligence, and violation of the CPA—courts have found the work done in support of the
13   CPA claim could not be separated from that of the other claims. <u>See, e.g.</u>, <u>Miller v. Kenny</u>, 180
14   Wash. App. 772, 824 (2014) (where the Court found the several causes of action involved "a
15   common core of facts and circumstances, in which the time devoted to discovery, pretrial
16   motions and preparation and trial of this intertwined action cannot be reasonably segregated");
17   <u>see also</u> <u>MKB Constructors v. Am. Zurich Ins. Co.</u>, 83 F. Supp. 3d 1078, 1089 (W.D. Wash.
18   2015) (finding it was not possible to segregate time spent on claims for breach of contract,
19   violation of IFCA, and bad faith from the CPA claims: "The court cannot say, for example, that
20   MKB would have spent less time in depositions, crafting written discovery questions or
21   responses, or at trial, if MKB had never asserted its CPA claim.").

22   Here, each of Plaintiff's claims involves the same set of facts surrounding Integon's
23   conduct and the extent of Plaintiff's injuries. Further, many of the witnesses overlapped between
24

1  the UIM and extra-contractual claims. (Dkt. No. 45 at 4.) Without the CPA claim, Plaintiff

2  would still have had to conduct depositions regarding Integon's claims' handling process, review

3  the claims file, and hire expert Steven Strzelec, actions also required to prove elements of his

4  CPA claim including Integon's deceptive acts or practices. The Court cannot say, therefore, that

5  Plaintiff would have spent less time in depositions, on discovery, or at trial, if he had never

6  asserted his CPA claim. The Court therefore finds that Plaintiff is entitled to recover his

7  attorneys' fees pursuant to the CPA.

8         3.  Reasonableness of Fees

9  Defendant challenges the reasonableness of Plaintiff's requested fees, arguing: (1)

10 Plaintiff's CPA fees have not been segregated and (2) counsel's rates are unreasonable. As

11 discussed above, the Court finds that work performed on Plaintiff's CPA claims cannot be

12 reasonably segregated from work performed on other claims. The Court therefore analyzes

13 whether the requested rates for Plaintiff's attorneys are reasonable and finds that that they are.

14 District courts have broad discretion to determine the reasonableness of fees. Gates v.

15 Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992). A determination of reasonable attorney fees

16 begins with a calculation of the "lodestar," which is the number of hours reasonably expended on

17 the litigation multiplied by a reasonable hourly rate. Mahler v. Szucs, 135 Wash.2d 398, 433-34

18 (1998). Integon has conceded that Plaintiff's requested rates for his paralegal, intern, and legal

19 assistant are reasonable (Dkt. No. 116 at 13 n.5), but objects to Plaintiff's requested hourly rates

20 for his attorneys. (Id. at 12.) Plaintiff requests $575 an hour for attorneys Michael Wampold,

21 Ann Rosato, and Felix Luna, and $500 an hour for attorney Thomas Gahan.

22 The Court finds these rates are commensurate with the work performed in this matter and

23 is not persuaded otherwise by the few hand-picked cases selected by Integon where the attorneys

24

1 were awarded less. This is especially so where Integon has not provided a tally of its own fees, a

2 telling indication of the reasonableness of Plaintiff's request. See Miller, 180 Wash. App. at 821.

3 Further, the Court approved an hourly rate of $550 for Mr. Wampold and $450 for Ms. Rosato

4 and Mr. Luna nearly six years ago (see Dkt. No. 119, Ex. 4); Cox v. Cont'l Cas. Co., No. C13-

5 2288 MJP, 2015 WL 3844270, at *7 (W.D. Wash. June 19, 2015), aff'd in part, vacated in part

6 on other grounds, 703 F. App'x 491 (9th Cir. 2017), and has awarded fees at higher hourly rates

7 for attorneys of comparable or even lesser experience and skill.

8       The Court also finds that Plaintiff's attorneys may apply their current hourly rates to all

9 work performed in this matter. While Integon concedes that the Washington Supreme Court

10 allows "using current rates or adjusting historic rates to account for inflation to compensate

11 attorneys for delay in payment," it contends that such adjustment is only permissible in the

12 "context of public litigation, but not for a dispute between two private parties." (Dkt. No. 100 at

13 13 (citing Fisher Properties, Inc. v. Arden-Mayfair, Inc., 115 Wn. 2d 364, 376-77 (1990).) But

14 Washington courts have been explicit that "private prosecution of Consumer Protection Act

15 violations is backed by public policy." Miller, 180 Wash. App. at 826. And "[t]he legislature

16 has expressly declared that the insurance business is one 'affected by the public interest.'"

17 Peoples, 194 Wash. 2d at 778.

18       4. <u>Multiplier</u>

19       Plaintiff requests that the Court apply a 1.5 to 2.0 multiplier to his attorneys' fees award.

20 Typically, the quality of work performed will not justify an enhancement because "in virtually

21 every case the quality of the work will be reflected in the reasonable hourly rate." Bowers v.

22 Transamerica Title Ins. Co., 100 Wash.2d 581, 599 (1983). The Court finds that Plaintiff has

23 failed to justify a multiplier here. Much of the egregious conduct Plaintiff contends justifies the

24

multiplier—for example, Integon's "regular[] assert[ion] of improper defenses and arguments" (Dkt. No. 96 at 5)—can alternatively be described as advocacy on behalf of a client. And Plaintiff points to no other factors that indicate this matter was the rare occasion that justifies a multiplier. Plaintiff's request is DENIED.

### 5. Prejudgment Interest

Plaintiff seeks prejudgment interest on his UIM breach of contract claim. Under Washington law, "[a] party is entitled to prejudgment interest where the amount due is 'liquidated.'" Unigard Ins. Co. v. Mutual of Enumclaw Ins. Co., 160 Wash.App. 912, 925 (2011) (citing Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wash.2d 654 (2000)). "A liquidated claim is one where the evidence furnishes data 'which, if believed, make it possible to compute the amount due with exactness, without reliance on opinion or discretion.'" Unigard, 160 Wash. App. at 925 (quoting Weyerhaeuser, 142 Wash.2d at 685.) Plaintiff's UIM claim is not liquidated. The jury was tasked with determining the extent of Plaintiff's injury and its effect on his life going forward, such effects cannot be computed with exactness. Further, although the claim was for the policy limit, a set amount, the jury's verdict could have been any amount up to the policy limit of $250,000, including no award. Because the UIM award was uncertain until the jury returned its verdict, Plaintiff is not entitled to prejudgment interest.

**Conclusion**

In conclusion, the Court holds:

(1) Defendant's Motion for Judgment as a Matter of Law Regarding Plaintiff's CPA Claim and Limitation of Verdict on UIM Benefits (Dkt. No. 95) is DENIED in part GRANTED in part:

    a. Defendant's Motion is DENIED as to Plaintiff's CPA claim;

      b. Defendant's Motion is GRANTED as to the limitation of benefits claim. Plaintiff's UIM benefits claim is limited to $250,000.

(2) Plaintiff's Motion for Fees and Motion Notwithstanding the Verdict on IFCA (Dkt. No. 96) is DENIED in part GRANTED in part:

      a. Plaintiff's Motion Notwithstanding the Verdict on IFCA is DENIED;

      b. Plaintiff's request for treble damages under the CPA is GRANTED and Plaintiff is awarded the statutory maximum of $25,000 on his CPA claim;

      c. Plaintiff's Motion for attorneys' fees is GRANTED:

           i. The Court finds that Plaintiff's attorneys' fees for his CPA claim cannot be reasonably segregated from his remaining fees;

           ii. The requested hourly rates of Plaintiff's attorneys are reasonable;

      d. Plaintiff's request for a fee multiplier is DENIED;

      e. Plaintiff is not entitled to prejudgment interest.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 16, 2021.

                Marsha J. Pechman
                United States Senior District Judge